UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN THE MATTER OF

ALEJANDRO DE LA CRUZ JACOBO
Material Witness

Case No. 3:21-mj-1402-JRK

## APPLICATION FOR ISSUANCE OF
## MATERIAL WITNESS ARREST WARRANT

The United States of America, by the undersigned Assistant United States Attorney, hereby applies pursuant to 18 U.S.C. § 3144 for issuance of a warrant for the arrest of ALEJANDRO DE LA CRUZ JACOBO as a material witness in the criminal proceedings of United States v. Guillermo Roman Alonso, Case No. 3:21-mj-1401-JRK. For the reasons set forth in the attached affidavit, the testimony of ALEJANDRO DE LA CRUZ JACOBO is material in the criminal proceedings against Guillermo Roman Alonso and it would be impracticable to secure his presence by subpoena.

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:  /s/ David B. Mesrobian
DAVID B. MESROBIAN
Assistant United States Attorney
USA No. 188
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Telephone: (904) 301-6300
Facsimile:  (904) 301-6310
E-mail:     david.mesrobian@usdoj.gov



AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
AND MATERIAL WITNESS WARRANT

I, Jonathan Baez, being a duly sworn and appointed Border Patrol Agent for the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol, hereby make the following statement in support of the attached criminal complaint.

1. I have been a Border Patrol Agent for over eighteen years. I have training and experience in the enforcement of the immigration and nationality laws of the United States. I am native speaker of both English and Spanish. In addition, I have training and experience in the preparation, presentation, and service of criminal complaints and arrest warrants.

2. The statements contained in this affidavit are based on my personal experience and observations as well as the experiences and observations of fellow Border Patrol Agents and other law enforcement officers as they have described them to me. This affidavit does not contain every fact regarding the investigation but only sufficient facts to support probable cause to believe that on August 19, 2021, GUILLERMO ROMAN ALONSO ("ROMAN"), a citizen of Mexico, transported an alien unlawfully present in the United States, for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i).

3. This affidavit also sets forth sufficient facts to establish probable cause to believe that the testimony of ALEJANDRO DE LA CRUZ JACOBO



("DE LA CRUZ"), a citizen of Mexico, is material in the criminal proceedings against ROMAN, that it would be impracticable to secure his presence by subpoena, and that therefore a material witness warrant should be issued to secure his presence, pursuant to 18 U.S.C. § 3144.

4. From training and experience, I know that criminal alien smuggling operations transport aliens who are unlawfully present in the United States from the border with Mexico to staging cities in California, Arizona, New Mexico, and Texas. After the aliens arrive in these cities, alien smugglers transport them to large metropolitan areas in the United States to look for better job opportunities. The smuggled aliens are primarily from Mexico, Guatemala, Honduras, and El Salvador. Smuggling cartels are usually owned by Mexican nationals and are operated from Mexico and within the United States. The smuggling cartels primarily use Hispanic males from Mexico or the United States to drive the smuggling vehicles because they speak Spanish and are familiar with Latin American customs and cultures.

5. On August 19, 2021, at approximately 2:30 p.m., a Florida Highway Patrol trooper contacted the Jacksonville Border Patrol Station and indicated that he had stopped a 2016 Mazda SUV with three occupants for speeding while traveling southbound on Interstate 75 near Lake City, in Columbia County, in the Middle District of Florida. The trooper advised that during the course of his

investigation, the back seat passenger, later identified as DE LA CRUZ, advised the trooper that he was unlawfully present in the United States and that he had paid the front seat passenger, later identified as ROMAN, to transport him from Texas to Florida. The trooper also advised that the driver of the vehicle, later identified as JOEL ALVARADO, was on federal probation for an alien smuggling conviction. Based on this information, Border Patrol Agents Stephen Garland, Joseas Montez, and I along with Homeland Security Investigations Special Agent Louis Hollis proceeded to the Lake City, Florida Highway Patrol Station to conduct additional investigation.

6. At approximately 3:30 p.m., I arrived at the Lake City Station where the subjects had been transported. I approached all three individuals and identified myself as a Border Patrol agent. I asked all three individuals separately of their immigration status. ROMAN and DE LA CRUZ said they were both from Mexico with no proper immigration documents to enter or remain legally in the United States. ALVARADO stated he was a United States citizen born in Laredo, Texas.

7. At approximately 5:00 p.m., Agent Hollis and I interviewed DE LA CRUZ. DE LA CRUZ stated that he is a citizen and national of Mexico, and he resided in the state of Jalisco. DE LA CRUZ stated that he arranged to be smuggled into the United States with a smuggler known as "Alexis." DE LA

CRUZ stated he agreed to pay "Alexis" eight thousand dollars once he was successfully smuggled. DE LA CRUZ said that "Alexis" illegally brought him across the border somewhere in the Laredo, Texas area, but that once he got across the border, "Alexis" abandoned him. DE LA CRUZ explained that a vehicle later picked him up near the border and took him to a house somewhere in Laredo, Texas. After a few days, DE LA CRUZ was transported to another house in San Antonio, Texas.

8. DE LA CRUZ said that law enforcement officials raided the residence where he was staying in San Antonio, but he was able to avoid arrest. DE LA CRUZ stated that after the raid, he met ROMAN at a nearby store. DE LA CRUZ stated that he explained his situation to ROMAN, and asked if ROMAN could transport him to Florida, to which ROMAN agreed. DE LA CRUZ said that his friend "Miguel" was going to pay ROMAN for the transportation fees, and that DE LA CRUZ paid ROMAN $200 for gas and food. DE LA CRUZ said that on August 18, 2021, ROMAN and ALVARADO picked DE LA CRUZ up from the hotel where he was staying, and they departed for Florida.

9. At approximately 6:15 p.m., Agent Hollis and I advised ROMAN of his constitutional rights, and he agreed to be interviewed. The interview was recorded. ROMAN said he is a Mexican national illegally present in the United



States. Furthermore, ROMAN said that he had been previously removed from the United States. ROMAN stated that in May 2021, he was stopped, along with eight other illegal aliens, by a sheriff's deputy in Texas. On that occasion, ROMAN stated that he provided information to law enforcement about an alien smuggling organization in Mexico with which he was involved, and the houses and vehicles used by the organization in the United States.

10. ROMAN said that he met DE LA CRUZ in Laredo, Texas, after DE LA CRUZ was abandoned by his smuggler. ROMAN said that he took DE LA CRUZ to his house and harbored him for approximately eight days. During that time, DE LA CRUZ explained to ROMAN that he had been abandoned by his previous smuggler and needed assistance getting to Florida. DE LA CRUZ provided ROMAN with the telephone number for his smuggler, "Alexis." ROMAN said that he communicated with "Alexis," and told him that he was with DE LA CRUZ. ROMAN said that "Alexis" advised ROMAN that ROMAN could transport DE LA CRUZ to Florida. ROMAN said that DE LA CRUZ agreed to pay ROMAN $1,400 to transport him to Florida.

11. ROMAN said that he informed his friend ALVARADO about DE LA CRUZ's situation, and ALVARADO agreed to accompany him on the trip to Florida. ROMAN said that he and ALVARADO were going to continue to



Miami for vacation after dropping DE LA CRUZ off. ROMAN also said that he and ALVARADO were going to split the smuggling fees.

12. At approximately 7:00 p.m., Agent Hollis and I advised ALVARADO of his constitutional rights, and he agreed to be interviewed. The interview was recorded. ALVARADO advised that he is currently on federal probation for transporting aliens unlawfully present in the United States, but denied any knowledge of DE LA CRUZ as an alien unlawfully present in the United States being smuggled. A Florida Highway Patrol trooper advised me that he had been in touch with a United States Probation Officer who was currently supervising ALVARADO.

13. On August 19, 2021, at approximately 8:20 p.m., I advised Assistant United States Attorney David B. Mesrobian of the foregoing facts, and he authorized criminal prosecution of ROMAN and also authorized an application for a material witness warrant for DE LA CRUZ.

14. During processing, a Border Patrol agent entered the fingerprints of ROMAN into a biometric identification system that compared his fingerprints with the fingerprints of persons who have been previously encountered by immigration authorities. The system returned a match and confirmed that: on June 18, 2008, ROMAN was detained for being unlawfully present in the United States, and allowed to voluntarily return to Mexico; on June 20, 2008, ROMAN



was detained for being unlawfully present in the United States, and subjected to expedited removal to Mexico; on February 11, 2021, ROMAN was detained for being unlawfully present in the United States, and returned to Mexico; and on May 9, 2021, ROMAN was detained for being unlawfully present in the United States, and returned to Mexico.

15. During processing, a Border Patrol agent entered the fingerprints of DE LA CRUZ into a biometric identification system that compared his fingerprints with the fingerprints of persons who have been previously encountered by immigration authorities. The system returned a match and confirmed that: on April 14, 2018, DE LA CRUZ was detained for being unlawfully present in the United States, and allowed to voluntarily return to Mexico; and on July 22, 2021, DE LA CRUZ was detained for being unlawfully present in the United States, and allowed to voluntarily return to Mexico.

Based upon the foregoing facts, I believe there is probable cause to establish that GUILLERMO ROMAN ALONSO transported an alien unlawfully present in the United States, for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i), and that



ALEJANDRO DE LA CRUZ JACOBO is a material witness for whom a material witness arrest warrant should be issued, pursuant to 18 U.S.C. § 3144.

Jonathan Baez, Border Patrol Agent
United States Border Patrol
Jacksonville, Florida

Sworn to before me on 8/20/2021.

James R. Klindt
U.S. Magistrate Judge

8